CARTER, Judge,
concurring in part and dissenting in part.
I agree with the majority insofar as they sustain the motions for directed verdicts in favor of Baton Rouge General Hospital and Dr. Joseph R. Gerdes, Jr., but I cannot agree with the majority insofar as they sustain the motion for directed verdict in favor of Dr. E. Edward McCool.
According to the jurisprudence of this state, the standard of care owed by a physician is to exercise that degree of skill and care which is usually possessed and exercised by members of his profession and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case before him. As a physician, he is not required to exercise the highest degree of skill and care possible, but to use reasonable care and diligence along with his best judgment. Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966); Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953); Harwell v. Pittman, 428 So.2d 1049 (La.App. 1st Cir.1983), writ denied, 434 So.2d 1092 (La.1983); Borne v. Brumfield, 363 So.2d 79 (La.App. 4th Cir.1978); Lauro v. Travelers Insurance Company, 261 So.02d 261 (La.App. 4th Cir.1972), writ refused, 262 La. 188, 262 So.2d 787 (1972).
*194 In the case sub judice, the policy of BRGH was that a person should not be transferred to another hospital unless he was stable enough to be transferred and that doctors on call were required to answer calls at the BRGH emergency room. The following colloquy took place between Dr. Gerdes, the emergency room physician, and Dr. McCool, the thoracic surgeon on call the night the deceased died:
Q. Did you talk to Dr. McCool?
A. I did.
Q. And what did you — well, would you relate that conversation to us?
Q. I told him I had a 19-year old man that was stabbed twice on the right side of the chest, that he came in in profound shock, no blood pressure or pulse, that we had I.V.’s going; we had put a tube in his chest, and one bottle was full of blood and we were starting on the second, and that it was coming out like it was running out of a faucet; and I mentioned that I thought he must have been stabbed in one of the great vessels.
Q. And what did Dr. McCool say?
A. Well, he asked me if he had an insurance.
Q. Did he ask you if he had any employment too?
A. No.
Q. And what was your reply?
A. I had a record on the patient there that indicated he had no insurance.
Q. And did you say to Dr. McCool?
A. I did.
Q. And what did Dr. McCool say to you?
A. Well, he asked me to transfer the patient.
Q. And when you say ‘transfer,’ what do you mean?
A. Transfer the patient to Earl K. Long Hospital.
Q. Earl K. Long Hospital is a charity hospital?
A. It is.
Q. Did you feel at the time you were having this conversation with Dr. McCool that this patient was in stable enough condition to be transferred?
A. No.
Q. Did you tell that to Dr. McCool?
A. I told him ‘I can’t transfer this patient.’
Q. And what did he say?
A. He said, ‘No. Transfer him.’
In light of Dr. McCool’s defiance of hospital policy requiring physicians on call to respond and try to stabilize critical patients before transferring them as well as Dr. McCool’s questionable use of reasonable care and diligence, I cannot say that, after reviewing the entire record, the facts and inferences point so strongly and overwhelmingly in favor of Dr. McCool’s absence of negligence. In the ease sub judi-ce, I believe reasonable minds could find negligence in Dr. McCool’s failure to render reasonable and necessary emergency medical service to the deceased.
For these reasons, I respectfully dissent from the result reached by the majority as concerns Dr. E. Edward McCool.